OPINION
Appellant, Amy Meadows, appeals the decision of the Warren County Common Pleas Court, Juvenile Division, granting permanent custody of her two children to the Warren County Children's Services Board ("WCCSB"). We affirm the decision of the trial court.
Appellant is the biological mother of Shane Meadows, born June 9, 1998, and Kyle Meadows, born January 6, 2000. On May 25, 2000, WCCSB was informed that appellant had fallen asleep and left Shane and Kyle unsupervised. WCCSB received information that, while appellant was passed out on the floor, 23-month-old Shane hit five-month-old Kyle in the ear and face. Eventually, appellant's sister was able to wake her. Appellant and her sister then took Kyle to the hospital for treatment.
The next day, WCCSB received information that appellant was again asleep, leaving the children unsupervised. A WCCSB investigator arrived at appellant's home and confirmed this information. Because appellant could not be awakened, the investigator called police and emergency medical personnel. Despite attempts to wake appellant, she did not wake until approximately 30 minutes after police arrived. While appellant was retrieving her identification from her purse, a police officer discovered marijuana and various prescription drugs not prescribed to appellant. Appellant was subsequently arrested and charged with child endangerment and drug abuse. She was eventually convicted of one count each of child endangerment and drug abuse, and was incarcerated from September 2000 to November 2000.
An emergency shelter care hearing was held in May 2000, and the children were placed in the temporary custody of WCCSB. Shane and Kyle were found by the trial court to be neglected and dependent children in July 2000. The trial court specifically found that on May 26, 2000, appellant had demonstrated a lack of supervision of her two minor children, and, as a result, that Shane had injured Kyle.
In August 2000, the trial court adopted a case plan for reunification, which appellant signed. The case plan required appellant to undergo a drug and alcohol assessment, as well as a psychological assessment. The case plan also required her to maintain stable housing and employment, earn a GED, and complete various programs such as parenting classes, Homeworks, and Mother's Group. From July 2000 to the present, the children have been in the foster care of Kim and Dan Jenkins. Appellant has been afforded limited visitation with the children.
On June 8, 2001, WCCSB filed a motion for permanent custody of Shane and Kyle. WCCSB alleged that the children had been in WCCSB's custody for 12 of the last 22 months, that the children could not and should not be placed with appellant within a reasonable time, and that it was in the children's best interest for the state to take permanent custody. The trial court held a hearing on the matter in September 2001. The trial court heard testimony from appellant, two caseworkers and a case aid from WCCSB, the children's foster mother, and a drug and alcohol therapist who treated appellant.
On September 25, 2001, the trial court granted WCCSB's motion for permanent custody. Appellant now appeals, raising two assignments of error.
Assignment of Error No. 1:
 "THE DECISION TO GRANT PERMANENT CUSTODY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
Under this assignment of error, appellant argues that the trial court erred in finding that it was in the children's best interest to grant WCCSB's motion for permanent custody. In support of this argument, appellant contends that she made great strides toward completing her case plan. According to appellant, she became drug-free, found stable housing, completed some of the required programs, and maintained her relationship with her children. Appellant further argues that any weakness in her bond with her children was a result of overly brief visitation periods, not her own shortcomings.
Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe that fundamental liberty interest, but to end it. Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769,102 S.Ct. at 1403. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
Before granting permanent custody of children to the state, the trial court is required to make specific statutory findings. The reviewing court must determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. In re William S., 75 Ohio St.3d 95,1996-Ohio-182.
When a state agency moves for permanent custody, the trial court is first required to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
We find that the trial court's determination that it is in the best interest of Shane and Kyle to be permanently placed in the custody of WCCSB is supported by clear and convincing evidence.
Jamie Caudill, a WCCSB case aide who supervised appellant's visits with her children, testified that appellant did not have a very strong bond with her children. She also testified that there was a very strong bond between the children and their foster parents.
Angela Wiseman, a WCCSB caseworker, testified that appellant's bond with her children was not as strong as the bond between the children and their foster mother. Ms. Wiseman also stated that during the scheduled visits, appellant seemed to have trouble watching both children at the same time. Ms. Wiseman noted that appellant cancelled one visit because her boyfriend, Herman, had given her two black eyes. Ms. Wiseman also suspected that, at the time of the permanent custody hearing, appellant was actually living with a man named Keith, and not in her rented apartment. On a scheduled home visit, Ms. Wiseman testified that the only furniture in the apartment was a couch, and that there were no clothes or dishes there. On a surprise home visit, Ms. Wiseman noted that no one was home and that it appeared no one was living at the apartment due to the cobwebs on the door.
Melissa Pitman, another WCCSB caseworker, also testified to a concern over appellant's ability to watch both children at the same time. Ms. Pitman recalled one instance during a visitation when appellant was playing with Shane and did not see Kyle crawling up a set of stairs. Ms. Pitman noted that appellant had not completed Mother's Group or Homeworks, though she had completed parenting classes.
Kim Jenkins, the children's foster mother, testified that she was willing to adopt both children. She stated that Kyle and Shane had changed greatly since she first took custody of them. At first, Kyle had a lot of trouble sleeping, and now he sleeps well. Shane was very angry at first and screamed a lot, but now he is more loving.
Robert Miller, a drug and alcohol counselor, testified that appellant had completed the drug and alcohol assessment requirement in the case plan. He noted that she always tested negative for alcohol and drugs.
Appellant testified that she had a six-month lease for an apartment in Carlisle, Ohio. She stated that she stays once or twice a week with her boyfriend Keith, who lives across the street. She acknowledged that stable housing was part of the case plan. She testified that her apartment was furnished, but that she did not yet have beds for the children because she did not have enough money. Appellant acknowledged that she had not taken any steps to earn her GED. She stated that she could not begin working toward her GED because she had been working 12 hours per day for the last three months, and was in jail for the two previous months. However, in the ten months prior to her incarceration, she testified that she did not take any steps toward earning her GED. Appellant testified that she had not completed Homeworks, but that she did attend several Mother's Group sessions in the last two months.
Jeffrey Lurie, the children's guardian ad litem, stated to the trial court at the permanent custody hearing that it was in the children's best interest to grant permanent custody to WCCSB. He stated that the lack of a strong bond between appellant and the children and appellant's lack of commitment to the children demanded this result.
Based on the factors in 2151.414(D) and all relevant evidence in the record, we find that there was clear and convincing evidence before the trial court that it was in Shane and Kyle's best interest for WCCSB to be granted permanent custody. The testimony at the permanent custody hearing shows that appellant's bond to the children was not strong, while the children bonded well and were thriving with the foster parents. Two caseworkers testified that appellant had difficulty watching both children at the same time. Appellant's living arrangements also did not appear to be stable. She did not have beds in which the children could sleep. Additionally, appellant failed to complete significant parts of her case plan, including participation in Homeworks and Mother's Group. Finally, the children's guardian ad litem strongly recommended permanent custody for the state.
Based on all the evidence in the record, we find that the trial court did not err in granting WCCSB's motion for permanent custody. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 "THE DECISION TO GRANT THE MOTION FOR PERMANENT CUSTODY WAS IN ERROR WHEN IT WAS BASED ON THE REQUIREMENT OF SECTION 2151.414(B)(1)(d) THAT THE CHILDREN BE IN CUSTODY OF A PUBLIC SERVICE AGENCY FOR 12 MONTHS OUT OF A 22 MONTH PERIOD WHEN, AT THE TIME OF THE FILING OF THE COMPLAINT FOR PERMANET [SIC] CUSTODY THE SUBJECT CHILDREN HAD NOT MET SUCH REQUIREMENT."
Under this assignment of error, appellant argues that WCCSB's motion for permanent custody was defective because "an essential element of the action for permanent custody" was not proved. According to appellant, the children were not in the custody of WCCSB for 12 to 22 months prior to the filing of the motion for permanent custody, as WCCSB alleged in its permanent custody motion. Thus, appellant contends, the trial court should not have granted the motion.
Appellant's argument is without merit. R.C. 2151.414(B)(1) provides:
 "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. (b) The child is abandoned. (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody. (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
"For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28
of the Revised Code or the date that is sixty days after the removal of the child from home."
In its June 8, 2001 motion for permanent custody, WCCSB alleged the following: "The children have been in temporary custody of Warren County Children's Services for the last 12 of 22 months. These children cannot be placed with either of his/her parents within a reasonable time and that these children should not be placed with either parent * * *."
Appellant correctly notes that the children had not, within the meaning of R.C. 2151.414(B)(1), been in the custody of WCCSB for 12 or more months of a consecutive 22-month period at the time WCCSB moved for permanent custody on June 8, 2001. The trial court found the children to be neglected and dependent on July 17, 2000. They were removed from the home on May 26, 2000. Thus, within the meaning of R.C. 2151.414(B)(1), they were considered to have entered the custody of WCCSB on July 17, 2000 because this date is earlier than the date 60 days after the children were removed from the home. See R.C. 2151.414(B)(1)(d).
However, this fact does not render WCCSB's motion defective nor does it mean that the trial court erred in granting WCCSB's permanent custody motion. In its motion, WCCSB also alleged that Shane and Kyle cannot and should not be placed with any of their parents within a reasonable time. The trial court specifically found, by clear and convincing evidence presented at the permanent custody hearing, that the children cannot and should not be placed with appellant within a reasonable time. Thus, the trial court's granting of permanent custody to WCCSB, though arguably not proper under R.C. 2151.414(B)(1)(d), was proper under R.C.2151.414(B)(1)(a).[1]
Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] We do not reach the question of whether a motion under R.C.2151.414(B)(1)(d) five weeks before the 12 of 22 months threshold is nonetheless valid so long as the hearing is after (8 weeks herein) the threshold.